UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

     Plaintiff,

v.

WOLFRAM RESEARCH, INC., STEPHEN
WOLFRAM and ERIC WEISSTEIN,

     Defendants.

_____/



FILED by _____ D.C.
INTAKE

      3    

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

     In 1999, defendant Wolfram Research negotiated with plaintiff, CRC Press, for a

license to post CRC Press's book, the "CRC Concise Encyclopedia of Mathematics," (Exhibit 2)[1]

on the Internet. After CRC Press declined to give a license on Wolfram Research's terms,

Wolfram Research went ahead anyway and copied almost all of CRC Press's book onto Wolfram

Research's Internet web site. There is no excuse for this brazen theft, and preliminary relief is

necessary.

### SUMMARY OF FACTS

     The facts are set forth in more detail in the affidavits of Robert Stern and Ronald

Powers.

     The copyrighted work at issue here, the "CRC Concise Encyclopedia of

_____

    [1] Exhibits 1 and 2 to this Memorandum are filed with the accompanying Notice of Filing.
The other exhibits referred to in this Memorandum of Law are attached to the Affidavit of Robert
Stern.

Mathematics" (the "Encyclopedia"), was written by defendant Eric Weisstein and published by plaintiff, CRC Press, LLC. Mr. Weisstein assigned the copyright in the Encyclopedia to CRC Press in an April 7, 1997 agreement, specifically including the exclusive rights to publish the Encyclopedia "in print, audio-visual, electronic or by any and all media now or hereafter known or devised, and the right to license or authorize others to do any or all of the foregoing throughout the world." Stern aff., Exhibit 1, ¶ 5.

CRC Press published the Encyclopedia in hardcover form on or about December 1, 1998, and in CD-ROM form in May, 1999 (Exhibit 2). Stern aff., ¶ 2.

In the late spring and early summer of 1999, defendant Wolfram Research sought a license from CRC Press to post the Encyclopedia on its web site. However, CRC Press did not want Wolfram Research to post the Encyclopedia on its web site without the payment of what it called "hard consideration." Stern aff., ¶¶ 18-22, Exhs. 7-9.

The parties failed to reach agreement, and CRC Press did not grant Wolfram Research a license to post the Encyclopedia on its web site. Stern aff., ¶ 23.

Effective June 1, 1999, Mr. Weisstein went to work for Wolfram Research. In late 1999 or early 2000, a new section appeared on Wolfram Research's web site titled "Eric Weisstein's World of Mathematics" or "MathWorld" (hereinafter "MathWorld"). Stern aff., ¶¶ 19, 25.

MathWorld is a copy of CRC Press's Encyclopedia, edited and formatted for posting on the Internet. Most of the text and figures in the Encyclopedia were copied verbatim into MathWorld. Virtually all of the remainder of the Encyclopedia was also copied, mostly with

2

minor editing.  Stern aff., ¶¶ 28-33.

After discovering MathWorld, which was prepared and posted without warning or notice to CRC Press, CRC Press demanded that Wolfram Research remove MathWorld from the Internet.  Upon Wolfram Research's refusal, this action was filed.  After unsuccessful settlement negotiations, CRC Press has been compelled to make this motion for a preliminary injunction to prevent further infringement of its copyright.  Stern aff., ¶¶ 24-27, 34.

## PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION TO STOP WOLFRAM RESEARCH FROM CONTINUING TO POST MATHWORLD ON ITS WEBSITE

Wolfram Research's unauthorized use of CRC Press's Encyclopedia on its web site constitutes deliberate copyright infringement, and Wolfram Research must be immediately enjoined from any further infringing use of the Encyclopedia.

To obtain a preliminary injunction in this Circuit, plaintiff must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to [defendants]; and (4) the injunction would not disserve the public interest." Tally-Ho, Inc. v. Coast Community College District, 889 F.2d 1018, 1022 (11th Cir. 1990); Kevin Harrington Enterprises, Inc., v. Bear Wolf, Inc., 1998 U.S. Dist. LEXIS 20597 at *13-14 (S.D. Fla. 1998).

## I.     CRC PRESS HAS A VERY STRONG CASE ON THE MERITS

Three of the claims in this case are for copyright infringement.  Complaint, First-Third Claims.  In order to prove copyright infringement, plaintiff must establish two elements:

"(1) ownership of a valid copyright and (2) unlawful copying of constituent elements of the work that are original." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 824 (11th Cir. 1982).

> A.    CRC Press Owns A Valid Copyright In The Encyclopedia.

The first element, ownership of a copyright in the Encyclopedia, is established by the assignment of the copyright in the Encyclopedia by Mr. Weisstein to CRC Press in the April 7, 1997 agreement (Stern aff., Exh. 1, ¶ 5) and evidenced by CRC Press's Certificate of Copyright Registration, effective January 13, 1999, No. TX 4-023-040. Stern aff., Exh. 3. The Certificate of Registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Stoneworks, Inc. v. Empire Marble and Granite, Inc., No. 95-3000, 1998 U.S. Dist. LEXIS 21762, at *6-7; 49 U.S.P.Q.2d (BNA) 1760, 1763 (S.D. Fla. March 5, 1998). It also establishes a presumption that the Encyclopedia is an original work. Regents of the University of Minnesota v. Applied Innovations, Inc., 685 F. Supp. 698 (D. Minn. 1987), aff'd, 876 F.2d 626 (8th Cir. 1989).

Federal courts have consistently held that fact-based works, like the Encyclopedia, are original works of authorship, and are therefore entitled to full copyright protection. In CDN Inc., v. Kapes, 197 F.3d 1256 (9th Cir. 1999), the Ninth Circuit held that a wholesale coin price guide contained original authorship, and enjoined the defendant from infringing plaintiff's work. The court found originality in plaintiff's estimates of the fair value of the coins. Id. at 1260. See also Urantia Foundation v. Maaherra, 114 F.3d 955, 959 (9th Cir. 1997) (holding that an

arrangement of divine revelations constituted sufficient originality for copyright protection).

Accord American Dental Ass'n v. Delta Dental Plans Ass'n, 126 F.3d 977 (7th Cir. 1997),

holding that a taxonomy of dental procedures and nomenclature was original. The court strongly

rebuked the lower court's failure to find creativity in the taxonomy because it "catalogs a field of

knowledge." Id. at 978.

As the Seventh Circuit noted in American Dental, many fact-based works,

including dictionaries and encyclopedias, are protected by copyright:

> The sweep of the district court's reasoning attracted the attention of many other
> supplier of taxonomies. The American Medical Association, the American
> National Standards Institute, Underwriters Laboratories, and several other groups
> … produce catalogs of some field of knowledge and depend on the copyright laws
> to enable them to recover the costs of the endeavor. Other groups or firms might
> say the same. The manuals issued by the Financial Accounting Standards Board
> to specify generally accepted accounting practices could not be copyrighted. Nor
> could the tests and answers devised by the Educational Testing Service. The
> district court's reasoning logically removes copyright protection from the West
> Key Number System, which is designed as a comprehensive index to legal topics,
> and A Uniform System of Citation (the Bluebook), a taxonomy of legal sources.
> Very little computer software could receive a copyright if the district judge is
> correct:  no one reads, for pleasure, the source or object code of the word
> processing program on which this opinion was written…. Blueprints for large
> buildings … instruction manuals for repairing automobiles, used car value guides,
> dictionaries, encyclopedias, maps –all these, and many more, would flunk the
> district court's test of originality. Yet these items are routinely copyrighted, and
> challenges to the validity of these copyrights are routinely rejected. (emphasis
> added).

Id. at 978. See also CCC Information Services Inc. v. Maclean Hunter Market Reports, 44 F.3d

61, 67 (2d Cir. 1994) (holding that the predicted values of used cars and the original selection of

material in an automobile "Red Book" made the work copyrightable); Pacific & Southern Co.,

Inc. v. Duncan, 744 F.2d 1490, 1494 (11th Cir.), cert. denied, 471 U.S. 1004 (1985) (holding that

editorial judgment used to make videotapes of TV news programs made tapes original works of authorship); Georgia Television Co. v. TV News Clips of Atlanta, 718 F. Supp. 939, 946 (N.D. Ga. 1989) (finding that the selection and editing of news clips merited copyright protection, and enjoining defendant from videotaping plaintiff's programs); Meredith Corp. v. Harper & Row Publishers, Inc., 378 F. Supp. 686, 688 (S.D.N.Y. 1974), aff'd, 500 F.2d 1221 (2d Cir. 1974) (finding a child psychology textbook sufficiently original and holding that "conscious paraphrasing" of the textbook constituted infringement).

   The Encyclopedia in this case is a fact-based work of authorship containing creative and original elements, including the text, the figures, the mathematical concepts chosen for discussion, and the references accompanying most entries.  According to the author, defendant Weisstein: "[I]t is written in an informal style intended to make it accessible to a broad spectrum of readers with a wide range of mathematical backgrounds and interests." See Introduction to Encyclopedia, p. 1.  Furthermore, according to Mr. Weisstein, the choice of material in the Encyclopedia is different from other mathematics reference books: "[e]verything in this work has been compiled by me alone.... The selection of topics included in this compendium is not based on any fixed set of criteria, but rather reflects my own random walk through mathematics." See Introduction to Encyclopedia, p. 1.

   The Encyclopedia is entitled to full copyright protection, and CRC Press owns the copyright.

B.   Wolfram Is Infringing The Copyright In The Encyclopedia

1.   MathWorld Is A Copy Of The Encyclopedia

To establish the second element of copyright infringement (where the claimed infringement consists of copying) plaintiff must show that (1) defendant had access to the copyrighted work at issue, and that (2) the defendant's work is substantially similar to plaintiff's. Original Appalachian, 684 F.2d at 829. Stoneworks, Inc., 1998 U.S. Dist. LEXIS 21762, at *6-7, 49 U.S.P.Q.2d at 1763.

In the case at hand, there is no dispute that defendants had access to the Encyclopedia. Defendant Wolfram Research negotiated for the right to put the Encyclopedia on its web site, and its author, defendant Weisstein, has worked for Wolfram Research since June 1, 1999. Stern aff., ¶ 18-23.

It is beyond dispute that MathWorld is substantially similar to the Encyclopedia. Of 515 entries in the Encyclopedia checked by CRC Press, 509, or 99%, appeared in MathWorld. (See Stern aff., ¶ 27). Of the 509 Encyclopedia entries (of the 515 reviewed) that were found in MathWorld, 335, or 65%, of the entries contained the identical text and figures as the Encyclopedia's entries. The bibliographic references in the Encyclopedia accompanying most entries, which also constitute an original and creative element of the Encyclopedia, also were substantially copied in MathWorld. See Stern aff., ¶¶ 28-33, Exhs. 11 and 12.

New matter was added to the Encyclopedia when Wolfram Research created MathWorld. CRC Press reviewed three letters of the alphabet in MathWorld and found that 275 out of 1553 entries were new. That meant, however, that the remaining 1278, or 82%, were

7

taken from the Encyclopedia.  Stern aff., ¶ 32.

This quantity of copying is more than enough for infringement.  See <u>Montgomery</u> <u>v. Noga</u>, 168 F.3d 1282, 1292-93 (11th Cir. 1999) (copying a work 70% of which was protected by copyright infringed the copyright in the protected work – copying of "any substantial part" is sufficient); <u>Lamb v. Starks</u>, 949 F. Supp. 753, 755-56 (C.D. Calif. 1996) (movie trailer contained enough from movie to make copying of trailer an infringement of the copyright in the movie). <u>Harper & Row, Publishers, Inc. v. Nation Enterprises</u>, 471 U.S. 539, 565-66 (1985) (300 words out of 2,250 constituted "substantial" copying).

In sum, there can be no doubt that MathWorld is substantially similar to the Encyclopedia, thereby satisfying the second element of infringement.

2.      <u>MathWorld Is A Derivative Work Of The Encyclopedia</u>

Another exclusive right that is reserved to the owner of a copyright under 17 U.S.C. § 106 is the right to prepare derivative works based upon the copyrighted work.  17 U.S.C. § 106(2).  MathWorld not only is or contains a copy of the Encyclopedia, but is also a derivative work of the Encyclopedia.

"Derivative work" is defined in the Copyright Act as follows:

> A "derivative work" is a work based upon one or more preexisting works.... A work consisting of <u>editorial revisions, annotations, elaboration, or</u> <u>other modifications</u> which, as a whole, represent an original work of authorship, is a "derivative work". (emphasis added).

17 U.S.C. § 101.

As noted above, Wolfram Research edited about 33% of the entries that it copied

from the Encyclopedia, and added new entries constituting about 18% of the entries in

MathWorld. Stern aff., ¶¶ 29B, 32. Editorial revision and addition is sufficient to create a new

copyrightable work. See 17 U.S.C. § 101; Montgomery v. Noga, 168 F.3d 1282, 1289-91 (11th

Cir. 1999) (additions and corrections to public domain computer program produced new,

copyrightable work). By creating a new copyrightable work based on the Encyclopedia,

Wolfram Research and Mr. Weisstein created a derivative work and thereby infringed CRC

Press's copyright in the Encyclopedia.

3.     The Maintenance Of MathWorld On Wolfram's Web Site Constitutes And Causes Copyright
       Infringement By Electronic Transmission Of Copies To Viewers, By Facilitating Infringing
       Downloads, And By Displaying The Work To Viewers

            Wolfram Research's maintenance of MathWorld on its web site enables the

electronic transmission of copies of MathWorld to visitors to Wolfram's web site. It also permits

the downloading of MathWorld by visitors. These features constitute ongoing copying,

distribution and display of an infringing work in violation of 17 U.S.C. § 106.

            With the increasing popularity of the Internet, courts have begun to identify the

kinds of copyright infringement caused by the posting of infringing works on the Internet.

Courts in this Circuit already have had to address this issue. In Playboy Enterprises, Inc., v.

Frena, 839 F. Supp. 1552 (M.D. Fla. 1993), Playboy sued the owner of a bulletin board service

on the Web for posting copies of Playboy's copyrighted photographs. Subscribers to the service

could view and download the pictures to their own computers, as well as upload or post pictures

to the web site's bulletin board. Id. at 1554. The court noted, "public distribution of a

copyrighted work is a right reserved to the copyright owner, and usurpation of that right

constitutes infringement." Id. at 1556. Plaintiff's right to distribute copies of the copyrighted

work had therefore been infringed under 17 U.S.C. § 106(3).[2] Plaintiff's "display" rights under

17 U.S.C. § 106(5) also were found to have been violated. Id at 1556-67. See Cable/Home

Communications Corp. v. Network Productions, Inc., 902 F.2d 829, 843 (11th Cir. 1990)

("[p]ublic distribution of a copyrighted work [a computer program] is a right reserved to that

copyright owner, and usurpation of that right constitutes infringement."). See also Playboy

Enterprises, Inc. v. Starware Publishing Corp., 900 F. Supp. 438 (S.D. Fla. 1995) (reproduction

and distribution of content maintained in electronic form on a CD-ROM disk was infringement).

Other circuits have also found that maintaining a web site that posts copyrighted

material constitutes infringement. That is, merely enabling visitors to make copies of the

infringing material, as Wolfram Research is doing here, constitutes infringement. In Playboy

Enterprises v. Russ Hardenburg, Inc., 982 F. Supp. 503, 512-514 (N.D. Ohio 1997), the court

held the defendant liable for copyright infringement for maintaining a bulletin board service with

412 graphic image files containing infringing copies of plaintiff's photographs. Following the

reasoning of Frena, supra, the court held that the defendants were active participants in the

infringement by facilitating the distribution and display of the photographs. Similarly, in Sega

Enterprises Ltd. v. Maphia, 948 F. Supp, 923, 932-33 (N.D. Cal. 1996), the court held that

---

2       "[T]he owner of copyright under this title has the exclusive rights to do and to authorize
        any of the following ... in the case of literary ... pictorial, graphic, or sculptural works,
        including the industrial images of a motion picture or other audiovisual work, to display
        the copyrighted work publicly." 17 U.S.C. § 106(5).

subscribers to a bulletin board service who uploaded or downloaded copyrighted Sega games were liable for copyright infringement.  In Sega, the defendant who owned the bulletin board service did not upload or post the infringing matter.  He was still found guilty of contributory infringement, since he had knowledge of the infringing activity and "induc[ed], caus[ed] or materially contribut[ed] to the infringing activity...."  Id. at 932.  (citation omitted).

In the case at bar, defendants' control over the posting and display of MathWorld is beyond dispute, and Wolfram Research's actions are even more egregious than in Sega in that Wolfram Research itself posted the infringing material.

There is no doubt that the continued posting of MathWorld infringes CRC Press's copyright.

C.     There Is No Defense

We are aware of no defense to the copyright infringement claim in this action. However, counsel for defendants, during the unsuccessful settlement negotiations that preceded this motion, suggested that they might raise several arguments.  None has any legal merit.

1.     Existence Of A Previous Copy Of The Encyclopedia
       On The Internet On Mr. Weisstein's University Web
       Page Would Not Excuse The Infringements Here

Wolfram Research has implied that Mr. Weisstein will claim that he was tacitly or expressly authorized to maintain a copy of the Encyclopedia on the Internet, and that such authorization somehow permitted him and Wolfram Research to create MathWorld out of the Encyclopedia and put it on Wolfram Research's web site.  In fact, any such authorization (which

CRC Press denies) would not provide any defense to the infringements involved in this action.

First, the written evidence shows that Mr. Weisstein did not receive permission to maintain the Encyclopedia on his university web page after the Encyclopedia was published. In 1997, Robert Stern of CRC Press wrote a letter to Mr. Weisstein that said, in part:

> As discussed, you should leave the web site alone until your book is <u>almost</u> published as it will provide lots of free advertising which can only bring us lots of sales. (emphasis added).

Stern aff., Exh. 4.

Mr. Weisstein followed CRC Press's instructions not to keep the entire Encyclopedia on the web after its publication. In April, 1999, after the Encyclopedia was published, Mr. Weisstein commented in an e mail to Joseph Ganzi of CRC Press that the "web version of any encyclopedia ... currently has many portions blocked at CRC's request." Stern aff., Exh. 5.

Even if Mr. Weisstein had kept the entire Encyclopedia posted, however, he would still have gained no right to continue its posting.

The failure of a copyright owner to stop an infringement of its copyright does not prevent it from later stopping that infringement. The failure to stop one infringement, <u>a fortiori,</u> does not prevent the copyright owner from stopping new infringements by the same party or any other party.

Assuming that CRC Press's tolerance of Mr. Weisstein's posting of a copy of part of the Encyclopedia on his University of Virginia web page constituted some kind of implied license, Mr. Weisstein acquired no right even to continue to maintain the Encyclopedia on that

web page when CRC Press changed its mind. It is well-settled that a license not supported by consideration is a license at will. Avtec Systems, Inc. v. Peiffer, 21 F. 3d 568, 574 n. 12 (4th Cir. 1994) (where the court found an implied "limited use license" "such an implied license is necessarily not exclusive and revocable absent consideration") (emphasis added). Accord Johnson v. Jones, 885 F. Supp. 1008, 1012 n. 6 (E.D. Mich. 1995) ("absent consideration, nonexclusive licenses are revocable").

Mere inaction and lapse of time does not create a prescriptive right to continue an infringement. Laches, the equitable defense that depends upon delay of prosecution, requires not only a lapse of time but a change of position to the prejudice of the infringer due to the infringer's reliance upon the inaction of the copyright owner. Such prejudice cannot be made out merely by the infringer becoming used to the status quo. Lulling the infringer into a "false sense of security alone [is not] enough to bar an otherwise proper claim." Russell v. Price, 612 F.2d 1123, 1126 (9th Cir. 1979), cert. denied, 440 U.S. 912 (1980). See also Dodd, Mead & Co., Inc. v. Lilienthal, 514 F. Supp. 105, 108 (S.D.N.Y. 1981) ("mere inaction" not sufficient to produce abandonment of rights on the copyright); Marvin Worth Productions v. Superior Film Corp., 319 F. Supp. 1269, 1273 (S.D.N.Y. 1970) ("Abandonment is not to be found in negative behavior").

Consequently, not even Mr. Weisstein was entitled to continue any posting of the Encyclopedia on his former web page, and neither Mr. Weisstein nor (a fortiori) Wolfram Research has a defense based upon CRC Press's tolerance of Mr. Weisstein's university web page.

2.    Any Permission Given to Mr. Weisstein To Maintain A Copy Of The
      Encyclopedia On His University Web Page Would Not Permit Him To
      Authorize Others To Post Copies Of The Encyclopedia On The Internet

          Even if Mr. Weisstein had had permission to post the whole Encyclopedia (which

he did not), permission given by a copyright owner to a licensee to exercise a right under

copyright does not give that licensee the right to exercise all rights under copyright.  Mr.

Weisstein's license, if any, to maintain part of the Encyclopedia on his university web page did

not empower him to authorize Wolfram Research to exercise any rights to the Encyclopedia.

The right to "authorize" the exercise of rights under copyright by someone else is a separate right

under copyright from the rights to copy, distribute, display, etc.  17 U.S.C. §106.  The right to

authorize copying, therefore, may not be exercised by anyone other than the copyright owner

unless that right has been expressly licensed or assigned.  Wolfram Research was not only not

licensed to post the Encyclopedia on the Internet, but such a license was expressly denied.  Stern

aff., ¶¶ 22-23.

3.    Wolfram Is Not Entitled To Rely On The Erroneous Copyright
      Notice Inside The CD-ROM Version Of The Encyclopedia

          Despite having asked CRC Press for a license to post the Encyclopedia on the

Internet and having been refused, Wolfram Research has asserted during settlement discussions

that it believed that Mr. Weisstein owned the copyright in the Encyclopedia.  We do not know if

Wolfram Research will take that position in court, but if it does, it is factually false, and the facts

it is based on are legally immaterial.

          CRC Press obtained a complete assignment of copyright in the Encyclopedia from

Mr. Weisstein in the April 7, 1997 agreement, which was confirmed later in the December 7, 1998 agreement relating to the CD-ROM version. Stern aff., Exhs. 1 and 2, ¶ 5.

CRC Press put a copyright notice on its own name in the Encyclopedia. See Encyclopedia, reverse side of title page. It registered its copyright in the Encyclopedia with the U.S. Copyright Office, effective January 13, 1999, creating a public record that any legitimate would-be copier of the Encyclopedia would check before copying. Stern aff., Exh. 3. When CRC Press published the CD-ROM version of the Encyclopedia, it placed on the disc a copyright notice in the name of its electronic publishing group, "Chapman & Hall/CRCnetBASE." Stern aff., ¶35.

Despite all of this more than ample notice of CRC Press's rights, plus the fact that Wolfram Research prepared its infringing version together with Eric Weisstein, who had himself assigned the copyright to CRC Press, Wolfram Research claims that it chose to rely upon, and was misled by erroneous copyright notices appearing inside the CD-ROM. Stern aff., ¶ 35.

It appears that the electronic files supplied to CRC Press by Mr. Weisstein constituting the content in the CD-ROM contained copyright notices wholly or partly in his name, and that CRC Press neglected to change these when the CD-ROM was published. Stern aff., ¶ 35. (Similarly, Wolfram Research asserts that Mr. Weisstein continued to display a copyright notice in his name on his university web page, even after he assigned CRC Press the copyright.) Nevertheless, it is preposterous for Wolfram Research to claim to have relied on this error in light of all the facts, and it is legally insufficient as a defense. See id.

Prior to the Berne Convention Implementation Act of 1988 (the "Berne Act"),

effective in 1989, proper copyright notice was essential to retaining copyright in a published work.  See, 9 Nimmer on Copyright, Appendix 34 at 34-6, "The House Statement on the Berne Convention Implementation Act of 1988."  However, after the Berne Act, the requirement to put a copyright notice on a work was eliminated.  Id.

For works published before the Berne Act, an error in the name given in the copyright notice provides a "complete defense" to a party that was actually misled thereby. However, this defense is expressly limited by statute to pre-Berne (that is, pre-1989) works: "With respect to copies and phonorecords publicly distributed by authority of the copyright owner before the effective date of the Berne Convention Implementation Act of 1988, where the person named in the copyright notice… is not the owner of copyright, the validity and ownership of the copyright are not affected.  In such a case, however, any person who innocently begins an undertaking that infringes the copyright has a complete defense to any action for such infringement if such person proves that he or she was misled by the notice…." (emphasis added). 17 U.S.C. § 406(a).  With copyright notice no longer an essential part of obtaining or maintaining a U.S. copyright, errors in notices no longer provide any defense.

Moreover, Wolfram Research would have to have been "misled" by the erroneous notice to have a defense.

First, as discussed above, Wolfram Research had independent knowledge of who actually owned the copyright in the Encyclopedia.  In addition, Wolfram Research is a major intellectual property publisher. See Stern aff., ¶¶ 15-17.  No sophisticated publisher would or could rely on the name in a copyright notice after the Berne Act, as noted above.

16

Furthermore, as a matter of law, even if Wolfram Research were an innocent infringer (which it is not), and had relied in reasonable good faith on Mr. Weisstein's supposed rights, it would be liable for infringement anyway. In Pinkham v. Sara Lee Corp., 983 F.2d 824 (8th Cir. 1992), the court held that a publisher who claimed that it had relied upon the apparent authority of its licensor in publishing a book was still liable for infringement, even if the infringement was "innocent" or even "accidental":

> Once a plaintiff has proven that he or she owns the copyright on a particular work, and that the defendant has infringed upon those "exclusive rights", the defendant is liable for the infringement and this liability is absolute. The defendant's intent is simply not relevant: The defendant is liable even for "innocent" or "accidental" infringements [citations omitted].

> This principle substantially distinguishes copyright law from the areas in which the general agency law doctrine of apparent authority typically is relevant. Apparent authority is usually based on the principle that when one of two innocent parties must suffer from the wrongful act of another, the loss would fall on the one whose conduct created the circumstances which allowed the third party to perpetrate the wrong and cause the loss [citations omitted]. On the other hand, liability for copyright infringement proceeds on the principle that "as between two innocent parties (i.e., the copyright owner and the innocent infringer) it is the latter who should suffer since he...has the ability to guard against the infringement by diligent inquiry...Melville B. Nimmer and David Nimmer on Copyright § 13.08 at 139 (1992).

Id. at 829. See also Playboy v. Frena, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993) ("Intent or knowledge is not an element of infringement....").

Consequently, errors in some of the copyright notices inside the CRC Press CD-ROM do not provide Wolfram Research with any defense. A fortiori, Mr. Weisstein's retention of a notice in his name on his university web page, a notice neither created nor maintained by CRC Press, provided no defense. Wolfram Research, which was well aware of who actually

owned the copyright from CRC Press's correct copyright notices, from its copyright registration, and from the contracts signed by Wolfram Research's employee, Mr. Weisstein, assigning the copyright to CRC Press, cannot even claim to have been misled by these errors. Wolfram Research's conduct in seeking a license from CRC Press bears this out.

CRC has, consequently, a very strong case on the merits, and preliminary relief should be granted.

II.    IRREPARABLE HARM IS BOTH PRESUMED
       HERE AND IS ACTUALLY OCCURRING

       A.    Infringement Raises A Presumption Of Irreparable Harm

At least one decision of this court and those of many circuits hold that there is a presumption of irreparable injury when plaintiff has established a likelihood of success on the merits of a copyright infringement claim. CBS, Inc. v. PrimeTime 24 Joint Venture, 9 F. Supp. 2d 1333, 1344-45, (S.D. Fla. 1997) (citations omitted); 4 Nimmer on Copyright § 14:06A (1999).

We believe that CRC Press's likelihood of success on the merits here is very clear, and that irreparable injury must be presumed to follow.

       B.    The Infringement Here Is Causing Irreparable Harm As A Matter Of Fact

As explained more fully in the Powers affidavit, Wolfram Research created a work that competes with the Encyclopedia, and posted it in an exceedingly prominent and accessible place – the Wolfram Research web site. Not only is the infringing, competing version readily accessible, but it is accessible for free. As Mr. Powers testifies in more detail in his

18

affidavit, this causes at least two kinds of harm.

First, with the free and prominent MathWorld version available online, containing virtually all the content of the Encyclopedia, CRC Press will lose sales of the Encyclopedia, particularly of the CD-ROM version. Second, the posting of MathWorld, essentially a new edition of the Encyclopedia, has taken away from CRC Press control of the further development and exploitation of its book. Now that a de facto second edition of the Encyclopedia has been published, CRC Press must, to compete, accelerate its own second edition as well as an Internet edition of the Encyclopedia. While this is necessary to compete with the Wolfram Research Internet edition, it is likely to cannibalize sales of the hard cover and CD-ROM versions of the Encyclopedia, and to increase CRC Press's costs by accelerating the expense of creating the new editions.

Harm that injures a business's market for its product or which gives a competitor an advantage in a market is held to be the kind of irreparable harm for which a preliminary injunction should be granted. See Tedder Boat Ramp Systems, Inc. v. Hillsborough County, 54 F. Supp. 2d 1300, 1305 (M.D. Fla. 1999) ("substantial loss in market share"); CBS Inc. v. PrimeTime 24 Joint Venture, 9 F. Supp. 2d 1333, 1345 (S.D. Fla 1998) (harm caused by "loss of network and station advertising revenue could be irreparable").

III.   DEFENDANT'S INJURY FROM THE INJUNCTION WILL BE NEGLIGIBLE

All an injunction here will do is stop defendants from profiting from the traffic that plaintiff's Encyclopedia is driving to or keeping at defendant's web site. Defendant has no equity in continuing to infringe.

In <u>Atari, Inc. v. North American Philips Consumers, Inc.</u>, 672 F.2d 607 (7th Cir. 1982), <u>cert. denied</u>, 459 U.S. 880 (1982), the Seventh Circuit granted a preliminary injunction to plaintiff. As the court noted, the infringing defendant's loss of profit argument "merits little equitable consideration." <u>Id.</u> at 620 (citations omitted): "Advantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing to complain that his vested interests will be disturbed." <u>Id.</u> (citations omitted). The court there found that a preliminary injunction was "necessary to preserve the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." <u>Id.</u> (citations omitted). <u>See also Apple Computer, Inc. v. Franklin Computer Corp.</u>, 741 F.2d 1240, 1254 (3rd Cir. 1983) (granting preliminary injunction to protect copyright holder's computer operating system, and finding that the presumption of irreparable harm is required in copyright cases to "protect the public interest underlying the copyright.").

In the case at hand, any profit that Wolfram Research might lose by deleting MathWorld from its web site is clearly outweighed by the public interest in protecting CRC Press's copyright in the Encyclopedia, and the court must enjoin Wolfram Research from any further unauthorized use of the Encyclopedia.

IV.    <u>THE INJUNCTION WOULD SERVE THE PUBLIC INTEREST</u>

For the reasons set forth in Point III above, there is no public interest served by a continuing infringement. The substance of the Encyclopedia is available to the public through its legitimate source, CRC Press.

20

CONCLUSION

      The Court should grant CRC Press a preliminary injunction prohibiting Wolfram

Research from continuing to keep MathWorld on its Internet web site.

Dated: March 31, 2000
      New York, New York

                              ADORNO & ZEDER, P.A.

                              Mitchell R. Bloomberg
                              Florida Bar No. 197289
                              2601 South Bayshore Drive
                              Suite 1600
                              Miami, FL 33133
                              Tel: (305) 858-5555
                              Fax: (305) 858-4777

                              Of Counsel:

                              David Rabinowitz, Esq.
                              Noeleen G. Walder, Esq.
                              Philippe Zimmerman, Esq.
                              MOSES & SINGER LLP
                              1301 Avenue of the Americas
                              New York, New York  10019
                              (212) 554-7800

                              Attorneys for Plaintiff, CRC Press, LLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum of Law was

hand-delivered on this ⊃\ day of March, 2000 upon:

Janet T. Munn, Esq.
Steel Hector & Davis LLP
200 South Biscayne Blvd.
Suite 4000
Miami, Florida 33131

and was served by mail on this ⊃\ day of March, 2000 upon:

Bradford P. Lyerla
Ryndak & Lyerla
30 North LaSalle Street, Suite 2630
Chicago, Illinois 60602

Mitchell R. Bloomberg, Esq.

279833

## TABLE OF CONTENTS

Page

SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  CRC PRESS HAS A VERY STRONG CASE ON THE MERITS  . . . . . . . . . . . . . . . . 3

    A.    CRC Press Owns A Valid Copyright In The Encyclopedia. . . . . . . . . . . . . . . . 3

    B.    Wolfram Is Infringing The Copyright In The Encyclopedia . . . . . . . . . . . . . . . 6

        1.    MathWorld Is A Copy Of The Encyclopedia  . . . . . . . . . . . . . . . . . . . . 6

        2.    MathWorld Is A Derivative Work Of The Encyclopedia  . . . . . . . . . . . . 7

        3.    The Maintenance Of MathWorld On Wolfram's Web Site
              Constitutes And Causes Copyright Infringement By Electronic
              Transmission Of Copies To Viewers, By Facilitating Infringing
              Downloads, And By Displaying The Work To Viewers . . . . . . . . . . . . . 8

    C.    There Is No Defense  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1.    Existence Of A Previous Copy Of The Encyclopedia On The
              Internet On Mr. Weisstein's University Web Page Would Not
              Excuse The Infringements Here . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        2.    Any Permission Given to Mr. Weisstein To Maintain A Copy Of
              The Encyclopedia On His University Web Page Would Not Permit
              Him To Authorize Others To Post Copies Of The Encyclopedia On
              The Internet  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.    Wolfram Is Not Entitled To Rely On The Erroneous Copyright
              Notice Inside The CD-ROM Version Of The Encyclopedia . . . . . . . . . 13

II.  IRREPARABLE HARM IS BOTH PRESUMED HERE AND IS ACTUALLY
    OCCURRING  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.    Infringement Raises A Presumption Of Irreparable Harm  . . . . . . . . . . . . . . 16

    B.    The Infringement Here Is Causing Irreparable Harm As A Matter Of Fact  . . . . 17

III.    DEFENDANT'S INJURY FROM THE INJUNCTION WILL BE NEGLIGIBLE . . . . 18

IV.    THE INJUNCTION WOULD SERVE THE PUBLIC INTEREST  . . . . . . . . . . . . . . . 19

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

279833