FILED BY D.C.
00 APR 12 PM
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

Plaintiff,

v.

WOLFRAM RESEARCH, INC., STEPHEN WOLFRAM and ERIC WEISSTEIN,

Defendants.
_______________________________/

**WOLFRAM'S MOTION AND MEMORANDUM OF LAW TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Defendant, Stephen Wolfram ("Dr. Wolfram"), pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, moves to dismiss the complaint against him for lack of personal jurisdiction.[1] The grounds supporting this motion are set forth below in the accompanying memorandum of law.

**MEMORANDUM OF LAW**

**(i) Background**

CRC Press, L.L.C. ("CRC") has filed a complaint alleging copyright infringement, breach of contract and tortious interference with contract. The complaint consists of five counts, three of which are asserted against Dr. Wolfram as an individual. The complaint relates to a scholarly work authored and originally published on the World Wide Web by Eric Weisstein ("Dr. Weisstein") under the title "Eric Weisstein's Treasure Trove of Mathematics" ("Treasure Trove"). Later, a portion of Treasure Trove was



[1] In lieu of dismissal, the Court should transfer the case. See the defendants' separately filed Motion to Transfer.

published in print by CRC under the title, *The Concise Encyclopedia of Mathematics* ("*Concise Encyclopedia*"). The essential dispute involves CRC's claim to own the copyright to the *Concise Encyclopedia* and that its copyright entitles it to preclude defendants from featuring a new and improved version of Treasure Trove, now called "Eric Weisstein's World of Math" ("World of Math"), on an internet website sponsored by Defendant Wolfram Research, Inc. ("WRI") and linked to WRI's primary web page. The defendants dispute that CRC may preclude them from offering the World of Math as a free-to-use website.

The instant motion does not engage the merits of that dispute. Here, Dr. Wolfram demonstrates only that this Court may not exercise personal jurisdiction over him because he has not had the required minimum contacts with Florida to satisfy the Due Process Clause.

**(ii) CRC's Specific Allegations vs. Dr. Wolfram**

CRC asserts three claims against Dr. Wolfram as an individual: vicarious copyright infringement, contributory copyright infringement and tortious interference with contract. CRC's claim for vicarious copyright infringement against Dr. Wolfram is supported only by allegations that he possesses a financial interest in WRI and had the authority to prevent WRI's alleged infringement of CRC's copyright, but did not do so. Complaint ¶¶ 30-31. CRC's claim for contributory infringement is based upon a conclusory information and belief allegation that Dr. Wolfram knowingly induced, caused and contributed to the infringement of CRC's copyright in the *Concise Encyclopedia*. Complaint ¶ 27. CRC's claim that Dr. Wolfram interfered with Dr. Weisstein's Author Contract with CRC is based on similarly conclusory information and belief allegations. Complaint ¶ 34. No factual basis is plead in any of these claims to

support CRC's invitation to the Court to exercise personal jurisdiction over Dr. Wolfram here in Florida.

**(iii) Summary of Dr. Wolfram's Declaration**

CRC's attempt to assert jurisdiction against Dr. Wolfram appears to be the product of guesswork and wishful thinking. In any event, CRC's pleading is inaccurate. Dr. Wolfram has not had sufficient contacts with Florida for plaintiff to sue him here. He has submitted an affidavit, attached as Exhibit "A," setting forth that:

1. He has transacted no business in Florida, ever. Wolfram Aff. ¶¶9, 10, 18.

2. He has had no personal involvement, direct dealing, or personal contact with CRC, inside or outside Florida, relating to the *Concise Encyclopedia* or any other business between WRI and CRC. Wolfram Aff. ¶¶ 5 – 8.

3. He owns no property or business interests in Florida. Wolfram Aff. ¶¶9, 10, 14 –18.

4. His only contacts with Florida have been sharply limited in number, sporadic and casual. Wolfram Aff. ¶¶ 10 – 21.

In light of these facts, and those set forth more fully in Dr. Wolfram's affidavit, the Court should dismiss the complaint against Dr. Wolfram for lack of personal jurisdiction.

**(iv) The Legal Standard**

A non-resident defendant cannot be brought before a federal court in Florida unless jurisdiction is proper under the Florida long-arm statute and the exercise of that jurisdiction comports with federal constitutional due process requirements. Jurisdiction must satisfy the requirements of Florida's long-arm statute, Fla. Stat. § 48.193, the reach of which is a question of Florida law and federal courts are required to construe it as

would the Florida Supreme Court. *Madera v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). The defendant must also have minimum contacts with Florida sufficient to satisfy constitutional due process requirements. *Venetian Salamni Co. v. Parthenais*, 554 So.2d 499, 500 (Fla. 1989); *Tobacco Merchants Ass'n of U.S. v. Broin*, 657 So.2d 939, 941 (Fla. 3d DCA 1995). Plaintiff, as the party seeking to subject Dr. Wolfram, a non-resident, to jurisdiction has the burden of pleading and proving the existence of the jurisdiction. *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162, 1170 (S.D. Fla. 1981).

**(v) Dr. Wolfram Has Not Had Sufficient Contacts With Florida To Support Jurisdiction**

The Complaint must be dismissed because Dr. Wolfram has not had sufficient contacts with Florida to satisfy constitutional due process requirements. Whether the exercise of personal jurisdiction over Dr. Wolfram comports with due process requires a two-part inquiry. First, the Court is to ask "whether the [Dr. Wolfram] purposefully established minimum contacts with [Florida]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)(*citing International Shoe Company v. Washington*, 326 U.S. 310. 316 (1945). Second, the Court is to ask whether the minimum contacts with Florida are such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U. S. at 316.

Fair play and substantial justice are served if Dr. Wolfram's connections with Florida are such that he could reasonably anticipate being haled into court here. *Burger King*, 471 U.S. at 477- 78 and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Dr. Wolfram must purposefully have availed himself of the privilege of conducting activities in Florida, thereby invoking the benefits and protection of the laws of the State of Florida. *Hanson v. Denckla*, 357 U.S. 235 (1958).

Under the *International Shoe*, *Hanson*, *World-Wide Volkswagen* and *Burger King* line of cases, the Court is permitted to exercise jurisdiction *only* (i) if contacts with Florida are so significant that he could be sued in Florida for any purpose *or* (2) if Plaintiff's claims are specifically related to Dr. Wolfram's contacts with Florida. Here, Dr. Wolfram's contacts with Florida do not satisfy either the general or specific test for minimum contacts.

Dr. Wolfram has had no meaningful contact with Florida. He has never conducted any business in Florida on his own behalf or on behalf of WRI. Wolfram Aff. ¶¶ 9, 10. He has never owned any business venture located in Florida. He has never owned or leased any real or personal property in Florida. Dr. Wolfram has no bank accounts in Florida. He has never maintained a telephone number or mailing address in Florida. Dr. Wolfram does not pay income taxes or real estate taxes in the State of Florida. Wolfram Aff. ¶¶ 9, 10, 14 - 18.

His only contacts with Florida consist of two personal vacations, the first in 1982 and the second nearly fifteen years later in January 1997, and attendance at fewer than five academic conferences, the most recent of which occurred more than a decade ago. Wolfram Aff. ¶¶ 19 - 21. These are not continuous and systematic activities which would create general jurisdiction over Dr. Wolfram in a Florida Court. Moreover, this Court lacks specific jurisdiction over Dr. Wolfram because none of his contacts with Florida relate to the matters at issue in this lawsuit, i.e., CRC, the *Concise Encyclopedia*, Dr. Weisstein or the World of Math website.

Indeed, Dr. Wolfram has had even fewer contacts with CRC than with the State of Florida. Dr. Wolfram did not participate in the meetings between WRI and CRC relating to Dr. Weisstein – which took place at WRI in Illinois. Wolfram Aff. ¶ 5. Dr. Wolfram

has never communicated with CRC, in Florida or otherwise, concerning any business matter or potential business matter. Wolfram Aff. ¶¶ 5 - 8. Because there are no exceptional circumstances that would warrant exercising jurisdiction here, *Madera v. Hall*, 916 F.2d at 1519, the Court should dismiss the complaint as to Dr. Wolfram for lack of personal jurisdiction.

**(vi) Dr. Wolfram Acted in his Official Capacity**

CRC appears to want to impute the contacts that his company has had with Florida and CRC in order to gain jurisdiction over Dr. Wolfram personally. Apparently relying on WRI's activities, CRC alleges that Dr. Wolfram "operates, conducts, engages in and carries on business in the State of Florida and has committed a tortious act within the State of Florida." Complaint ¶ 4.

CRC's gambit must fail. The activities of the corporation may not be imputed to Dr. Wolfram for jurisdictional purposes. *Doe v. Thompson*, 620 So.2d 1004, 1005-1006 (Fla. 1993) (non-resident "chief executive officer is not by virtue of his position subject to personal jurisdiction"). Thus, whatever contacts WRI may have had with CRC or Florida count for nothing when assessing Dr. Wolfram's minimum contacts. Even Dr. Wolfram's own conduct will not supply the basis for *personal* jurisdiction if his actions were taken in his official capacity as President of WRI.

> While a corporation itself may be subject to jurisdiction when it transacts business through its agents operating in the forum state, unless those agents transact business on their own accounts, as opposed to engaging in business as a representative of the corporation, they are not engaged in business so as to be individually subject to the state's long-arm statute. [*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996)(*quoting Excel Handbag Co. v. Edison Bros. Stores*, 428 So.2d 348, 350 (Fla.Ct..App. 1983); *see also Black v. Bryant*, 905 F.Supp 1046, 1052 (M.D. Fla. 1995)]

The corporate shield doctrine protects individuals like Dr. Wolfram from the unfairness of defending a suit in Florida where the individual's only relevant contacts with Florida are on acts undertaken on behalf of the corporation. *Doe v. Thompson*, 620 So.2d at 1006.

**(vii) Conclusion**

The Court does not have jurisdiction over Dr. Wolfram and, thus, the claims against him must be dismissed or, in the alternative, the case should be transferred to the Federal District Court for the Central District of Illinois where venue would be proper and the Court would enjoy personal jurisdiction over all three defendants.

Respectfully submitted,

STEEL HECTOR & DAVIS LLP
Attorneys for Defendants
200 South Biscayne Boulevard, Suite 4000
Miami, Florida 33131
Telephone: (305) 577-2864
Telecopy: (305) 577-7001
E-mail: jmunn@steelhector.com

AND

Bradford P. Lyerla, Esq.
RYNDAK & LYERLA
30 N. LaSalle Street, Suite 2630
Chicago, Illinois 60602
Telephone: (312) 214-7770
E-mail: lyerla@ryly.com

BY: Janet T. Munn
Janet T. Munn
Florida Bar No. 501281

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. mail this 12th day of April, 2000 to: **MITCHELL R. BLOOMBERG, ESQ.,** Attorneys for Plaintiff, Adorno & Zeder, P.A., 2601 South Bayshore Drive, Suite 1600, Miami, Florida 33133 **AND DAVID RABINOWITZ, ESQ.,** Moses & Singer LLP, 1301 Avenue of the Americas, New York, New York 10019.

BY: Janet T. Munn
Janet T. Munn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ATTACHMENT / EXHIBIT A

CASE NO. 00-00893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

Plaintiff,

vs.

WOLFRAM RESEARCH, INC., STEPHEN WOLFRAM and ERIC WEISSTEIN

Defendants.

_________________________________/

**AFFIDAVIT OF STEPHEN WOLFRAM**

Stephen Wolfram, under oath, states as follows:

1. I am the President of Wolfram Research, Inc. ("WRI"). I have personal knowledge of the facts set forth herein.

2. I received my doctorate in theoretical physics from the California Institute of Technology ("Caltech") at age 20. I worked as an academic researcher at Caltech, the Institute for Advanced Study in Princeton, New Jersey, and the University of Illinois. I received the MacArthur Prize in 1981, the youngest person to have received the honor at that time.

3. I founded WRI in 1987. WRI is a privately held corporation located near the University of Illinois in Champaign, Illinois. WRI has over two hundred employees and affiliated companies in Europe and Asia. WRI is a widely known and well respected developer of technical software. WRI's principal product is its *Mathematica* software, which it created in 1987 and has since continued to enhance through extensive research and development activities. *Mathematica* is used by academic, engineering, professional and industrial researchers.

*Mathematica* is in use at all of the Fortune 50 companies, each of the fifteen major departments of the U.S. government, and all of the world's fifty largest universities. *Mathematica* and WRI have won numerous local, national and international awards from the business and academic communities, as well as from mathematical, scientific and government organizations.

4. Since founding WRI, I have combined my responsibilities for overseeing the welfare of the company with continued work in science. The commercial success of WRI supports my scientific work, and that of other research scientists employed by the company. I consider WRI's support for scientific research, my own and others, to be one of its most important functions. My scientific work includes publication in refereed academic journals of physics, computer science, and complex systems theory. I am also author of several well respected books in these fields.

5. In recent years, I have concentrated my efforts primarily on scientific work, and have had less contact with the day-to-day business of the company.

6. I am aware that in 1999, representatives of CRC Press, LLC (CRC) and WRI met at WRI's headquarters in Champaign, Illinois to discuss the possibility of deepening the relationship between our companies. I did not participate in this meeting with CRC.

7. I have no recollection of ever participating in any meetings with CRC. I am certain that I have never attended a prearranged business meeting with CRC. The only contact that I conceivably could have had with CRC is that I may have casually visited CRC's booth at a trade show or academic conference at some time in the past, although I have no recollection of ever having done so.

8. I never visited CRC in Florida; nor have I ever called CRC or sent e-mail to CRC.

9. I have no recollection of ever communicating with CRC concerning any business relationships or potential business relationships between WRI and CRC.

10. I have never conducted any business or business ventures in Florida on my own behalf.

11. I have never conducted any business or business ventures in Florida on behalf of WRI.

12. Any actions that I may have taken concerning the hiring of Dr. Eric Weisstein were taken in my official capacity as President of WRI. Any actions I may have taken concerning the hiring of Dr. Weisstein took place in Illinois.

13. Any actions that I may have taken concerning Dr. Weisstein's assignments as an employee of WRI were taken in my official capacity as President of WRI. Any actions I may have taken concerning Dr. Weisstein's assignments took place in Illinois.

14. Any actions I took concerning WRI's mathematics web site known as "Eric Weisstein's World of Mathematics" (mathworld.wolfram.com) were taken in my official capacity as President of WRI and were in Illinois.

15. I have never owned or leased any real or personal property in Florida (other than the short-term personal use of a rental car when I visited Florida for a vacation or academic conference).

16. I have no bank accounts in Florida.

17. I have never maintained a telephone number or mailing address in Florida.

18. I do not pay income taxes or real estate taxes in the State of Florida.

19. I have never owned any personal business ventures in Florida.

20. My most recent contact with Florida was a personal vacation (of less than one week) which I took in January 1997. I also took a vacation to Florida in approximately 1982.

21. Apart from the 1997 vacation, I have not been to Florida for over a decade.

22. Other than my two vacations, I have been to Florida fewer than five times. Each of the other visits was for an academic conference or to give an academic talk. The last such visit took place some time in the 1980s.

Stephen Wolfram

Subscribed and Sworn to

Before me this 7th day of April, 2000

Rebecca S. Porth

