UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

      Plaintiff,

v.

WOLFRAM RESEARCH, INC., STEPHEN
WOLFRAM and ERIC WEISSTEIN,

      Defendants.
_____/

### DEFENDANTS' WOLFRAM RESEARCH, INC.'S, STEPHEN WOLFRAM'S AND ERIC WEISSTEIN'S MOTION AND MEMORANDUM OF LAW TO TRANSFER TO THE CENTRAL DISTRICT OF ILLINOIS

Defendants, Wolfram Research, Inc. ("WRI"), Stephen Wolfram ("Dr. Wolfram") and Eric Weisstein ("Dr. Weisstein"), by their attorneys, hereby request that this Court transfer this matter, *CRC Press v. Wolfram Research, Inc. et al*, Case No. 00-893-CIV., to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a). The grounds supporting this motion are set forth below in the accompanying memorandum of law.

### MEMORANDUM OF LAW

#### Background

CRC Press, L.L.C. ("CRC") has filed a complaint alleging copyright infringement, breach of contract and tortious interference with contract, in five counts. The complaint relates to a scholarly work authored and originally published on the World Wide Web by Dr. Weisstein under the title "Eric Weisstein's Treasure Trove of Mathematics" ("Treasure Trove"). Later, a portion of Treasure Trove was published in



print by CRC under the title, *The Concise Encyclopedia of Mathematics* ("*Concise Encyclopedia*"). The essential dispute involves CRC's claim to own the copyright to the *Concise Encyclopedia* and that its copyright entitles it to preclude defendants from featuring a new and improved version of Treasure Trove, now called "Eric Weisstein's World of Math" ("World of Math"), on an internet website sponsored by defendant WRI and linked to WRI's primary web page. The defendants dispute that CRC may preclude them from offering the World of Math as a free-to-use website.

The instant motion does not address the merits of that dispute. Here, defendants ask only that this dispute be heard in the Central District of Illinois because that forum is more convenient for the parties and witnesses and will better serve the interests of justice.

### Transfer To The Central District Of Illinois

Under 28 U.S.C. 1404(a), a case may be transferred to any other district in which it may have been brought for "the convenience of parties and witnesses, in the interest of justice." This case should be transferred to the Central District of Illinois – the only district in which this case can be brought against all Defendants in one action.[1]

The Central District of Illinois is an appropriate jurisdiction for transfer. It is a jurisdiction in which the case might have been brought because all three defendants reside there. See, 28 U.S.C. § 1391. Additionally, the convenience factors of 28 U.S.C. § 1404(a) weigh heavily in favor of transfer to the Central District of Illinois.

---

[1] This Court does not have personal jurisdiction over Dr. Wolfram. See, Dr. Wolfram's motion to dismiss which he has filed contemporaneously with this motion as an alternative to transfer. Note that this Court may transfer this action under 28 U.S.C. §1404 without first obtaining jurisdiction over Dr. Wolfram. *Milligan Elec. Co. Inc., v. Hudson Constr. Co.,* 886 F. Supp. 845, 850 (N.D. Fla. 1995).

There are several convenience factors which the Court is to consider in deciding whether to transfer this case:

- convenience of the parties
- convenience of the witnesses
- relative ease of access to sources of proof
- availability of process to compel the presence of unwilling witnesses
- cost of obtaining the presence of the witnesses
- the public interest

*Jewel Masters, Inv. v. The May Dept. Stores, Co.*, 840 F. Supp. 893, 895 (S.D. Fla. 1993). *Windmere Corp. v. Remington Prod., Inc.*, 617 F. Supp 8, 8 (S.D. Fla. 1985).[2] The weight to be given each particular factor depends on the facts of the particular case. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In this case, all six balance of convenience factors favor transferring this case to the Central District of Illinois.

### The Convenience of the Parties

The first factor, convenience of the parties, favors transfer. All three defendants are present in the Central District of Illinois. *See*, Cronin Decl. at ¶ 2, attached as Exhibit "A." Whereas only the plaintiff is located in the Southern District of Florida. *Windmere*, 617 F. Supp at 8 ("convenience of the parties is best served by transferring the action"

---

[2] Although the Eleventh Circuit has expressed the opinion that a forum selection clause, when present, is to be given significant weight, here the rationale of *In re Ricoh* does not apply for at least two reasons. 870 F.2d 570, 573 (11th Cir. 1989). First, the Agreement containing the forum selection clause applies only to Dr. Weisstein. Second, even as to him, the enforceability of the Agreement is itself in dispute.

from Florida where only the plaintiff resides to the district where all three defendants are located).

Further, the Southern District of Florida does not have jurisdiction over Dr. Wolfram. As set forth in his motion to dismiss for lack of personal jurisdiction, Due Process will not permit this Court to exercise jurisdiction over Dr. Wolfram because he lacks sufficient contacts with the State of Florida. See, Dr. Wolfram's motion to dismiss pp. 4 -7 and supporting declaration ¶¶ 7 -22 filed contemporaneously with this motion. As Dr. Wolfram may not be sued here, transferring the case to a district with personal jurisdiction over Dr. Wolfram will allow the controversy to be resolved in a single lawsuit – which will be more convenient for the parties (and the court system) than two lawsuits. Thus, the first factor – convenience of the parties – weighs heavily in favor of transfer.

### The Convenience of the Witnesses

The second factor, convenience of the witnesses, favors transfer. The core group of key witnesses is located in Illinois. The individual defendants, Dr. Wolfram and Dr. Weisstein, both reside in Illinois and most WRI employees with relevant information are located in Illinois. Cronin Decl. at ¶ 3.[3] Dr. Weisstein is likely to be the central witness in this matter as he is knowledgeable about the development and content of the World of Math, the development and content of the *Concise Encylopedia* and his dealings with CRC.

---

[3] Two potential WRI witnesses are in California, and another is in the United Kingdom. None are in Florida. Cronin Decl. ¶ 3.

4

Most of CRC's potential witnesses who were personally involved with the events relevant to this dispute, are no longer employed by CRC. Defendants do not currently have information about the residence of these former employees, however it is believed that some no longer live in Florida.   Cronin Decl. at ¶ 4..

Illinois is centrally located. Thus, it is easy for witnesses to travel to Illinois whether they are coming from the West Coast, the East Coast, or from Florida. Chicago is serviced by all major airlines and it is possible to get a direct flight to Chicago from almost anywhere in the United States. Cronin Decl. at ¶ 8. It is then an easy drive of about two and a half hours to the courthouse in the Central District of Illinois. Additionally, shuttle flights are available from Chicago, St. Louis, Detroit and Pittsburgh to Willard Airport in Champaign. Cronin Decl. at ¶ 9. Good lodging is readily available and inexpensive in Champaign-Urbana, Illinois, where the courthouse is located. Cronin Decl. at ¶ 9.

### The Relative Ease of Access to Sources of Proof

The third factor, the relative ease of access to sources of proof, favors transfer to the Central District of Illinois. The bulk of the documents are located in Illinois. The books and records of all three defendants are located in the Central District of Illinois. Cronin Decl. at ¶ 5. Any acts performed by WRI and Dr. Wolfram related to the allegedly infringing website occurred in Illinois. Any documents relating to those acts are located in Illinois. Cronin Decl. at ¶¶ 5,6.  Dr. Weisstein's notes and documentation related to the World of Math and to the *Concise Encyclopedia* are located in Illinois. Weisstein Decl. at ¶ 8, attached as Exhibit "B." Any documents Dr. Weisstein has related to his dealings with CRC are located in Illinois. Weisstein Decl. at ¶ 8. The only

meeting that occurred among Dr. Weisstein, WRI and CRC occurred in Champaign, Illinois. Weisstein Decl. at ¶ 9.

### The Availability of Process to Compel the Presence of Unwilling Witnesses

The fifth factor, the availability of process to compel the presence of unwilling witnesses, favors the Central District of Illinois. The bulk of the witnesses are located in Illinois, thus the presence of those witnesses can be compelled there. Additionally, because Illinois is centrally located, it is a convenient destination from anywhere in the United States. The costs and travel time to Illinois will be less than to Florida for the majority of the witnesses.

### Public Interest Factors

CRC's claims are based primarily on Federal Copyright Law, thus, the public interest in adjudicating the claims will be served equally well by either forum.[4] However, a comparison of the number of cases on each courts' docket, demonstrates that transfer to the Central District of Illinois will best serve the public interest. As of September 30, 1990, the Southern District of Florida had 7,207 pending cases (5,664 civil and 1,543 criminal) while the Central District of Illinois had less than 20% of that number – only 1,398 pending cases (1,159 civil and 239 criminal). *Judicial Business of the United States Courts 1999*, Tables C-6 and D-8, www.uscourts.gov/judbus1999/c06sep99.pfd and www.uscourts.gov/judbus1999/d08csep99.pfd, respectively. *Windmere*, 617 F.

---

[4] To the extent that Florida may be said to have an interest in the adjudication of CRC's common law claims, Illinois has an equal countervailing interest in seeing Dr. Weisstein's counterclaims adjudicated.

Supp. at 10 (public interest factor favored transfer from the Southern District of Florida to a district with 45% fewer cases).

### The Forum Selection Clause

Plaintiff may contend that the forum selection clause in its Author Agreement with Dr. Weisstein, which specifies Florida, outweighs the six convenience factors discussed above which favor transfer to Illinois. Plaintiff's forum selection argument should be rejected. While a forum selection clause may carry weight, *In re Ricoh*, 870 F.2d 570, 573 (11th Cir. 1989), it is well-established that the Court may not base its transfer decision solely upon such a clause. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988).

Here, there are at least two compelling reasons to give the forum selection clause little weight. First, the clause applies only to Dr. Weisstein and not to WRI or Dr. Wolfram. Second, the clause carries little weight because the enforceability of the Author Contract itself is disputed. Even if the Author Contract were enforceable – and Dr. Weisstein denies that – there is no dispute that the forum selection part of the contract is boilerplate/contract of adhesion matter. It is well-recognized that such clauses count for little when evaluating whether to transfer under section 1404(a). *E.g.*, *Stewart*, 487 U.S. at 29 –30 (unequal bargaining power between the parties is a factor to consider in determining whether to put aside a forum selection clause); *In re Ricoh*, 870 F.2d at 573-74 (misrepresentations and unequal bargaining power between the parties are exceptional circumstances to be considered); *XR Co. v. Block & Balestri PC*, 44 F. Supp.2d 1296 at 1300 (S.D. Fla. 1999)(misrepresentations are exceptional circumstances as is unequal bargaining power).

7

With over 3500 titles in print, CRC is a major publisher of books on technical subjects such as mathematics, science, and engineering. CRC has been in the publishing business for nearly nine decades. Stern Decl. at ¶ 6.

In contrast, Dr. Weisstein is an individual who at the time of contracting with CRC just recently completed his graduate studies. Not only was this Dr. Weisstein's first book, it was his first experience with a major publishing house and he was not represented by legal counsel or a literary agent. Weisstein Decl. at ¶ 5. Of course, Dr. Weisstein is not a lawyer and he has no legal training. Weisstein Decl. at ¶ 3.

CRC took advantage of Dr. Weisstein's lack of sophistication and naiveté about the publishing world. Dr. Weisstein was presented with a contract and he was told that there was no room to negotiate. It was presented as a take-it-or-leave-it deal. He was also led to believe that the terms of this contract were standard industry-wide and that as a first time author he would get the same deal no matter where he went.[5] Weisstein Decl. at ¶ 6. This was false, but Dr. Weisstein did not know it. As a result, he signed an Author Agreement containing the following forum selection clause:

> Each of the parties to this Agreement hereby expressly and irrevocably agrees and consents that any suit, action, or proceeding arising out of or relating to this Agreement shall be instituted exclusively and only on a state or federal court sitting in Miami, Florida, and by execution of this Agreement, each of the parties hereto expressly waived any objection that it may have now or hereafter to the laying of venue or to the jurisdiction of any such suit, action or proceeding in Miami, Florida, and each of the parties to this Agreement further irrevocably, exclusively, and unconditionally submits to the personal jurisdiction of any state or federal court sitting in Miami, Florida in connection with any such suit, action or proceeding. [Author Agreement, ¶16(l).]

---

[5] Dr. Weisstein was also misled about the meaning of several key provisions of the Author Agreement. Weisstein Decl. at ¶ 7.

CRC unfairly denied Dr. Weisstein an opportunity to negotiate. Because the forum selection clause is the result of *both*: the existence of exceptional disparity in bargaining power between the parties *and* CRC's misstatements, it should be put aside and given no weight for purposes of defendants' request to transfer. *Stewart*, 487 U.S. at 29–30; *In re Ricoh*, 870 F.2d at 573-74; *XR Co.*, 44 F. Supp.2d at 1300.

### Conclusion

"For the convenience of parties and witnesses and in the interest of justice," this matter should be transferred to the Central District of Illinois pursuant to 28 U.S.C. § 1404(a).

Dated: April 12, 2000

          Respectfully submitted,

          STEEL HECTOR & DAVIS LLP
          Attorneys for Defendants
          200 South Biscayne Boulevard, Suite 4000
          Miami, Florida 33131
          Telephone:  (305) 577-2864
          Telecopy:  (305) 577-7001
          E-mail:  jmunn@steelhector.com

          AND

          Bradford P. Lyerla, Esq.
          RYNDAK & LYERLA
          30 N. LaSalle Street, Suite 2630
          Chicago, Illinois 60602
          Telephone:  (312) 214-7770
          E-mail:  lyerla@ryly.com

BY: _____
      Janet T. Munn
      Florida Bar No. 501281

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. mail this 12th day of April, 2000 to: **MITCHELL R. BLOOMBERG, ESQ.,** Attorneys for Plaintiff, Adorno & Zeder, P.A., 2601 South Bayshore Drive, Suite 1600, Miami, Florida 33133 **AND DAVID RABINOWITZ, ESQ.,** Moses & Singer LLP, 1301 Avenue of the Americas, New York, New York 10019.

BY: _/s/ Janet T. Munn_
Janet T. Munn

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA


ATTACHMENT / EXHIBIT A

CASE NO. 00-00893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

        Plaintiff,

vs.

WOLFRAM RESEARCH, INC., STEPHEN
WOLFRAM and ERIC WEISSTEIN

        Defendants.
_____/

**AFFIDAVIT OF MICHAEL CRONIN**

Michael Cronin, under oath, states as follows:

1. I am employed by Wolfram Research, Inc. ("WRI"). My current title is Legal Administrator. I am a lawyer and am admitted to practice law in the state of Illinois. I have personal knowledge of the facts set forth herein.

2. Dr. Wolfram and Dr. Weisstein are both employees of WRI and reside in Illinois. WRI is headquartered in Champaign, Illinois.

3. Most WRI employees with knowledge potentially relevant to the lawsuit reside in Illinois. One WRI employee with knowledge about WRI's negotiations with CRC Press, LLC ("CRC") resides in California and one consultant used by WRI who has knowledge about WRI's negotiations with CRC resides in California. Additionally, one WRI employee with potentially relevant knowledge about WRI's website resides in the United Kingdom.

4. There are several former CRC employees with knowledge relevant to this dispute. Neither I nor any other WRI employees know where all of the former CRC employees reside.

However, I am informed and believe that some of the former CRC employees no longer reside in Florida.

5. The books and records of all three defendants, Dr. Wolfram, Dr. Weisstein and WRI are located in Illinois.

6. Any acts performed by WRI related to the allegedly infringing website occurred in Illinois and any documents relating to those acts are located in Illinois.

7. The only meeting that occurred among Dr. Weisstein, WRI and CRC occurred in Champaign, Illinois.

8. Most major airlines service Chicago, Illinois and it is possible to get a direct flight to Chicago from almost anywhere in the United States.

9. Champaign-Urbana, Illinois where the courthouse is located is about two and a half hours from Chicago by car. Additionally, Willard Airport in Champaign is a short shuttle flight from Chicago. Service to Willard Airport is also available from Detroit, St. Louis and Pittsburgh. Good lodging is readily available and inexpensive in Champaign-Urbana.

_____
Michael Cronin

Subscribed and Sworn to
Before me this _____ day of April 2000

_____
REBECCA S. [illegible]
ILLINOIS
COMMISSION EXPIRES 10/21/02

2



ATTACHMENT / EXHIBIT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-00893-CIV-GRAHAM/TURNOFF

CRC PRESS, LLC,

        Plaintiff,

vs.

WOLFRAM RESEARCH, INC., STEPHEN
WOLFRAM and ERIC WEISSTEIN

        Defendants.
_____/

**AFFIDAVIT OF ERIC WEISSTEIN**

Eric Weisstein, under oath, states as follows:

1. I am employed by Wolfram Research, Inc. ("WRI"). My title is currently Technical Internet Encyclopedia Developer. I have personal knowledge of the facts set forth herein.

2. I currently reside in Illinois.

3. I am a scientist. I received my bachelor's degree in physics from Cornell University in 1990 and I received my doctorate degree in planetary science from the California Institute of Technology in 1996. I am not a lawyer and I have never had any legal training.

4. I began discussions with CRC Press LLC ("CRC") about *The Concise Encyclopedia of Mathematics ("Concise Encyclopedia")* in 1996. I signed the Author Agreement with CRC in April 1997.

5. CRC is the first publishing house I had ever dealt with and the *Concise Encyclopedia* was my first book. I was not represented by legal counsel or a literary agent.

6. The Author Agreement was presented to me by CRC as a take-it-or-leave-it deal. I was told that there was no room to negotiate, with the single exception that CRC increased the royalty rate for derivative works from 5% to 10%. Based on my discussions with CRC, I also understood that the terms of this Agreement were standard in the publishing industry and that because I was a first time author I would get the same deal no matter where I went. I later learned this was not true.

7. In addition to the above misrepresentations, I was misled by CRC about the meaning of several key provisions of the Agreement.

8. My records are located in Illinois. In particular, my notes and documentation related to "Eric Weisstein's Treasure Trove of Math" and "Eric Weisstein's World of Math" are located in Illinois. My notes and documentation related to the *Concise Encyclopedia* are located in Illinois and any documents I have with respect to my dealings with CRC are located in Illinois.

9. There was one meeting between myself, WRI and CRC which occurred in Champaign, Illinois.

*Eric Weisstein*
_____
Eric Weisstein

Subscribed and Sworn to
Before me this 10th day of April 2000

"OFFICIAL SEAL"
NOTARY PUBLIC
REBECCA S. PORTH
STATE OF ILLINOIS
COMMISSION EXPIRES 10/21/02

*Rebecca S. Porth*

2